(26 Misc. Rep. 20.)

### WATSON v. DEALY et al.

(Supreme Court, Appellate Term. January 23, 1899.)

FRAUDULENT CONVEYANCES—EVIDENCE.

On an issue of the bona fides of a chattel mortgage given by a landlady to one of her boarders, a receiver of the mortgagor testified that the mortgagee told him that the failure to file the mortgage prior to his appointment as receiver was due to the neglect of her attorney; that, just before a sale by him of the goods, she told him that she had loaned her name long enough, and would not do it again. This the mortgagee denied, and testified to having claimed ownership of the goods in her conversations with the receiver; that the mortgage was to secure a loan of the amount stated therein; that a writing executed by the mortgagor the day of the mortgage, reciting a delivery of the property to the mortgagee, had been kept by her in her trunk. She showed the chattel mortgage to the receiver, but not the writing. A third person testified to being employed a few days before the trial to draw an instrument reciting the making of a mortgage similar to the one in suit, the date being left blank; that

he had never seen the writing relied on on the trial before. Mortgagor testified that the paper in question was the only one she had signed. *Held* insufficient to warrant a finding that the mortgage was executed in good faith for value.

Appeal from municipal court, borough of Manhattan, Eleventh district.

Action by Charles A. Watson, as receiver of the property of Mary Hewsey, against D. Edmond Dealy and another. There was a judgment for defendant Hoefgen, and plaintiff appeals. Reversed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Robert J. Mahon, for appellant.
William H. Johnston, for respondent.

GIEGERICH, J. The plaintiff was appointed the receiver of the property of one Mary S. Hewsey, by an order made the 19th day of May, 1898, in an action in the city court of New York, wherein one Robert J. Mahon was judgment creditor and said Mary S. Hewsey was debtor. His bond as such receiver having been approved on May 26, 1898, he brought this action to recover possession of certain chattels alleged to be the property of said judgment debtor. The defendant Hoefgen claimed title thereto under a chattel mortgage made by said judgment debtor to her to secure the payment of the sum of $1,500, bearing date the 14th day of February, 1898, and the following writing, which she testified was executed and delivered by the said judgment debtor to her on the day it bears date:

"Whereas, I have this day made and executed to Anna Hoefgen a chattel mortgage for the sum of $1,500, covering all the household furniture at and now contained in the house No. 108 West 45th street, New York City, and which is fully described in the said chattel mortgage, but which mortgage fails to provide the day of payment of the said sum of $1,500 to said Hoefgen, and the said sum of $1,500 be now actually due from me to said Anna Hoefgen, I herewith turn over and deliver the said Anna Hoefgen all the said furniture contained in the said chattel mortgage, and contained in the house No. 108 W. 45th street, said city, and herewith deliver to said Hoefgen possession of said furniture, and consent that the said sum of $1,500 become due and payable on demand, and that said Hoefgen take and hold said mortgaged furniture under the said mortgage.

"Dated N. Y. City, Feb. 14th, 1898.                Mary S. Hewsey."

The defendant Hoefgen testified that by virtue of said instrument she took immediate possession of the furniture in question, and that she continued to reside upon the premises where such chattels were, and wherein the judgment creditor conducted a boarding house, she being one of the boarders.

The plaintiff gave testimony to the effect that on the 8th day of June, 1898, when he demanded the possession of the chattels from Mrs. Hewsey, she and Mrs. Hoefgen stated that the property had been mortgaged to the latter, whereupon he replied that the mortgage had not been filed until after the order appointing him receiver had been made; that on the following day he was informed by Mrs. Hoefgen of the discovery that said chattel mortgage was filed on the 21st day of May, 1898; that on the next day said defendant told him that, owing to the negligence of her lawyer, it was not

filed until then; that subsequent thereto, while the auctioneer was assorting the goods preparatory to a sale thereof, Mrs. Hoefgen stated to him:

"Well, I have loaned my name long enough, and if I was asked to do it again, I would not, and I will get out of it before to-morrow. I won't be there when the sale is going on, because I am sick of it."

The witness admitted being served with a notice, signed by Mrs. Hoefgen, bearing date June 10, 1898, calling attention to the said chattel mortgage and its filing "on the ——— day of May, 1898," and claiming "that said mortgage is a good, valid, and existing lien on said goods and chattels."

The defendant Hoefgen denied having made the statements attributed to her, and testified that at the very beginning of her conversation with the plaintiff she claimed ownership of the furniture in question, and that the sum mentioned in the chattel mortgage was afterwards loaned by her to the said judgment debtor. On cross-examination she testified that the said writing of February 14, 1898, since its delivery aforesaid, had been kept in her trunk; that she had shown it to her lawyer, Mr. Johnston, and also to one Mc-Cluskey, and to Mrs. Hewsey; that it was prepared, signed, and delivered in Mr. Hanniman's office; that she never called plaintiff's attention thereto, but showed him the chattel mortgage.

In rebuttal of this testimony, plaintiff called Robert Tone Pettit, a law clerk employed in the office of William F. Randall, Esq., who testified that he was acquainted with one Alexander, whom he identified as the person next to defendant's counsel in the court room, and who, he said, had come to the office where the witness was employed on the previous Thursday, where a conversation took place in the manner detailed by the following testimony:

"Q. What did Alexander say to you on that day? A. He came to me, Mr. Alexander did, and said, 'Have you a typewriter?' I says, 'Yes, 'round at my house.' 'Where is your house?' I said, 'No. 20 Lawrence street.' He says, 'I will give you a dollar if you will let me use it to draw up a short contract.' I says, 'All right; come around.' I went around with him to where I live, and went into the basement, and opened the upstairs door, and took him into the parlor. I got the typewriter, and put it out there, and Mr. Alexander had some paper. Mr. Alexander, I saw, was not familiar with the machine, and I am not an expert, but I offered to do the work. I started, at Mr. Alexander's dictation, and I drew a paper reciting the making of a chattel mortgage for $1,500 to Annie W. Hoefgen, and reciting the fact, further, that the mortgage was to be payable on demand, and that possession of the property covered by the mortgage is hereby surrendered to Annie Hoefgen. Q. What is the date of that paper? A. That paper I dated, at Mr. Alexander's direction, 'New York, February [blank], 1898.' Q. It was a blank there? A. Yes; 'February [blank], 1898.' Mr. Alexander— I made several mistakes in the paper, and Mr. Alexander was very much pressed for time, apparently. He threw a dollar down, and grabbed the paper, and gave me no opportunity to make a couple of changes that should have been made in the paper. That is not the paper which I drew (referring to exhibit). Q. State what more was done concerning that, Mr. Pettit. A. As soon as Mr. Alexander took the paper, and threw down a dollar, he went out of the door, and down the steps, and, as I walked over this way, the thought came to my mind, 'What does that man want with a paper dated last February?' I immediately went across the street to my office, and I started inquiries to find out in what case a Mrs. Hewsey or Hoefgen was interested. The Court: How was the name spelled? A. Hoefgen, I think it was. By the Attorney for Plaintiff: Did he

state where the furniture was located? A. Some number downtown; 110 something. Q. West or east? A. It was the west side. Q. Do you recollect now far down? A. In the forties, I think. Q. Do you remember what the name was? A. Anna Hoefgen. I know he called my attention to that. I says, 'I have it Anna on the top line; or the second line from the top;' and he says, 'Make it Anna all the way through.'"

The witness further testified that he had never seen defendant's Exhibit A before.

Mrs. Mary Hewsey testified that the paper in question was the only one which she had signed, and that it had been in her possession since the date thereof; but such testimony, as seen, was no answer whatever to the accusation made by Pettit, which substantially is that the writing defendant's Exhibit A was not executed upon the day it bears date, but within a few days of the trial. Although Alexander was present at the trial, he was not called as a witness, and the record fails to disclose any reason why the testimony of the attorney who is said to have drawn the writing in question, or of the person who, Mrs. Hoefgen testified, saw it before the trial, was not procured.

In view of these circumstances, and of the fact that Mrs. Hoefgen's claim to the chattels prior to the action was based solely upon the chattel mortgage, and that she did not claim under defendant's Exhibit A until the trial of this case, I fail to perceive upon what theory the trial justice could award, as he did, judgment in her favor. It being obvious that injustice has been done, we should, under the circumstances, exercise the power which we possess of reversing upon the facts. McLaughlin v. Harriot, 14 Misc. Rep. 343, 35 N. Y. Supp. 684.

Therefore, the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.